UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

XXX International Amusements,
Inc., f/k/a VGR Systems Corp.,                    Case No. 15-14156

                    Plaintiff,
                                                  Senior U.S. District Judge
v.                                                Arthur J. Tarnow

Gulf Coast Visuals Management                     U.S. Magistrate Judge
Company, LLC, et al.,                             David R. Grand

                    Defendants.
_____/

### Order Granting in part and Denying in part Defendants' Motion to Dismiss [44]; Denying Defendant's Motion to Dismiss [45]; Denying Plaintiff's Motion to Dismiss [54]; Denying Plaintiff's Motion for Partial Summary Judgment [55]; and Granting in part and Denying in part Defendants' Motions for Summary Judgment [56, 57]

The following motions are before the Court: a Motion to Dismiss [44] filed

by Defendants SGS Management Company, Inc. and Anwar Enterprises, Inc.,

LaGrange Trading Co., and Western Adult Enterprises; a Motion to Dismiss [45]

filed by Defendant Gulf Coast Visuals Management Company, LLC; a Motion to

Dismiss Counter-plaintiffs' Claim for Accounting [54] filed by Plaintiff XXX

International Amusements, Inc.; a Motion for Partial Summary Judgment [55] filed

by Plaintiff XXX International Amusements, Inc.; a Motion for Summary

Judgment [56] filed by Defendants SGS Management Company, Inc. and Anwar

Enterprises, Inc., LaGrange Trading Co., and Western Adult Enterprises, Inc.; and

a Motion for Summary Judgment [57] filed by Defendant Gulf Coast Visuals Management Company, LLC.

For the reasons stated below, and incorporating the reasons stated on the record, the Court: **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss [44]; **DENIES** Defendant's Motion to Dismiss [45]; **DENIES** Plaintiff's Motion for Partial Summary Judgment [55]; **GRANTS in part and DENIES in part** Defendants' motions for summary judgment [56, 57]; and **DENIES** Plaintiff's Motion to Dismiss Counter-plaintiffs' Claim for an Accounting [54].

## FACTUAL AND PROCEDURAL BACKGROUND

This is a breach of contract case arising out of agreements for the service and maintenance of video arcade equipment, known as "peep show booths" in adult bookstores. Plaintiff XXX International Amusements, Inc. ("XXX") installs, manages, and services video arcade devices in adult book and video entertainment businesses. Defendant Gulf Coast Visuals Management Company, LLC ("Gulf Coast") owns adult book and video entertainment businesses, including Defendants Anwar Enterprises ("Birmingham Books"), LaGrange Trading Co. ("Airline Bookstore"), and Western Adult Enterprises, Inc. ("Alabama Books") (hereinafter

"the Adult Bookstores").  Defendant SGS Management Company, Inc. ("SGS")
also manages adult retail stores.[1]

## I.  XXX, Gulf Coast, and the Adult Bookstores

In October 1997, the Adult Bookstores entered into service agreements with
non-party Goalie Entertainment, Inc. ("Goalie"). Pursuant to the 1997 service
agreements, Goalie agreed to provide services for the installation, maintenance,
and repair of video arcade devices in the Adult Bookstores, in exchange for 50%
gross revenues collected from customers' use of the devices. Upon the execution of
the 1997 service agreements, non-party Lynda Entratter owned the Adult
Bookstores. In January 2008, Goalie assigned the 1997 service agreements to
XXX.

Entratter died in December 2009. Edward Wedelstedt, then-owner of XXX,
was named Personal Representative of her estate. As Personal Representative of
the estate, Wedelstedt became the "owner" of the Adult Bookstores.

In January 2010, James Olsafsky and Ded Dedvukaj formed Gulf Coast in
order to purchase the Adult Bookstores from Entratter's estate. At that time,
Olsafsky and Dedvukaj were 50/50 members of Gulf Coast, with Olsafsky as the
company's manager.

---

[1] SGS manages the cash flow of the Adult Bookstores. SGS also oversees Gulf
Coast as a parent or sister company.

Pursuant to a Management Agreement effective April 15, 2010, but not dated and signed until April 20, 2011, Gulf Coast became the manager of the Adult Bookstores. The Management Agreement authorized Gulf Coast to enter into contracts on behalf of the Adult Bookstores. The Management Agreement also provided that Gulf Coast had the option to purchase the Adult Bookstores from Entratter's estate.

On April 15, 2010, XXX and Gulf Coast entered into the 2010 Service Agreements which are the subject of this action (hereinafter "the Agreements").[2] The Agreements were signed by Olsafsky, on behalf of Gulf Coast, and Scott Moore on behalf of XXX. Like the 1997 service agreements, the Agreements provided that XXX would be responsible for the installation, maintenance, and repair of the arcade devices in the Adult Bookstores, in exchange for 30% of all gross revenues for a term of ten years.

On November 22, 2010, XXX and Gulf Coast entered into an Addendum to the Agreements. The 2010 Addendum altered the profits' split, entitling XXX to 40% of gross revenues.

---

[2]XXX submits that because Gulf Coast became the manager of the Adult Bookstores, new service agreements were required between XXX and the Adult Bookstores.

Gulf Coast exercised its stock purchase option, set forth in the Management Agreement, on May 2, 2011. Wedelstedt transferred 100% of the stock to Gulf Coast on October 7, 2011.

Between 2012 and 2013, it was discovered that Olsafsky was engaging in fraudulent conduct in various business enterprises. Dedvukaj, on behalf of Gulf Coast, filed a lawsuit against Olsafsky in Wayne County Circuit Court. Pursuant to a settlement agreement entered into in March 2014, Olsafsky agreed to pay Gulf Coast $300,000 and relinquish his membership in the LLC. Dedvukaj is currently the sole owner of Gulf Coast and the Adult Bookstores.

After Olsafsky left Gulf Coast, Dedvukaj hired Brian White to supervise the Adult Bookstores. Defendants submit that in late 2013, Dedvukaj and White discovered that XXX was collecting walk-out fees in excess of the amount authorized under the 60/40 split.

On September 30, 2014, Gulf Coast notified XXX via letter that, beginning on October 1, 2014, it would no longer require XXX's services. In the letter, Gulf Coast indicated that XXX was to promptly remove all of its equipment from the Adult Bookstores. Gulf Coast did not provide a reason for terminating the Agreements in its letter.

On October 7, 2014, XXX informed Gulf Coast of its belief that Gulf Coast's actions amounted to a gross violation of the Agreements.

On February 28, 2015, XXX attempted to remove its equipment from storage and discovered that it was damaged.

## II. XXX and SGS

SGS was formed in December 2011 to manage the cash flow of the Adult Bookstores. XXX alleges that SGS, on behalf of the Adult Bookstores, was delinquent in paying its portion of the video arcade proceeds under the Agreements. On June 9, 2014, XXX drafted a Promissory Note to evidence the debt the Adult Bookstores allegedly owed to XXX and to establish a repayment scheme of $1,000 per week by SGS. The payment scheme was reached based on email communications between Moore, on behalf of XXX, and White, on behalf of SGS. In the emails, White indicated that SGS would agree to pay XXX $1,000 per week. White further agreed to allow Moore to memorialize the arrangement and stated that he would forward it to Dedvukaj for approval. The Promissory Note was never signed.

XXX submits that between June 2014 and October 2014, SGS made regular payments to XXX on the Promissory Note, but has failed to make any payments on the outstanding debt since October 2014. XXX argues that SGS defaulted on its obligations under the assumed debt and owes a balance of $29,650.

## III.    Procedural History

XXX commenced this action on November 25, 2015. XXX filed a Motion for Leave to File an Amended Complaint [24] on January 30, 2017, which the Court granted in part and denied in part. [Dkt. #38]. XXX filed the Amended Complaint [40] on May 3, 2017. Counts I-III of the Amended Complaint allege breach of each 2010 Service Agreement. Count IV alleges breach of contract against SGS for failing to pay on the Promissory Note. Count V alleges unjust enrichment against all Defendants. Defendants have not filed answers to the Amended Complaint.

On May 17, 2017, SGS and the Adult Bookstores, and Gulf Coast, filed motions to dismiss [44, 45] pursuant to Fed. R. Civ. P. 12(b)(6). On July 31, 2017, XXX filed a Motion to Dismiss Counter-plaintiffs' Claim [54] pursuant to Fed. R. Civ. P. 12(c) and a Motion for Partial Summary Judgment [55] pursuant to Fed. R. Civ. P. 56. Also on that date, SGS and the Adult Bookstores, and Gulf Coast, filed motions for summary judgment [56, 57] pursuant to Fed. R. Civ. P. 56. The Court held a hearing on the motions on March 19, 2018.

### LEGAL STANDARDS

On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*,

693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same de novo standard as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

On a Rule 56 motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

The arguments set forth in Defendants' motions to dismiss, and repeated in their motions for summary judgment, are assessed first under the Rule 12(b)(6) standard, and, where necessary, under the Rule 56 standard. The few issues raised exclusively in Defendants' motions for summary judgment are assessed strictly under the Rule 56 standard.

## ANALYSIS

### I. Breach of Contract (Counts I-III)

Alabama law governs the Agreements listing Birmingham Books and Alabama Books. Louisiana law governs the Agreement listing Airline Books.

Under Alabama law, the elements of a breach of contract claim are: "(1) the existence of a valid contract binding the parties in the action, (2) the plaintiff's own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995). In Louisiana, "to prevail on a breach of contract claim, the plaintiff must prove by a preponderance of the evidence: 1) defendant owed him an obligation; 2) defendant

failed to perform the obligation; and 3) defendant's failure to perform resulted in damage to the plaintiff." *Stipp v. MetLife Auto & Home Ins. Agency, Inc.*, 17-61 (La. App. 5 Cir. 8/30/17), 225 So. 3d 1182, 1189, *writ denied,* 2017-1774 (La. 12/5/17), 231 So. 3d 632.

### A. Whether the Agreements bind the Adult Bookstores and Gulf Coast as parties

A contract is an agreement that imposes a mutuality of obligation on the parties. *See Marcrum v. Embry*, 291 Ala. 400, 403 (1973); *Le Mieux Bros. v. Tremont Lumber Co.*, 52 F. Supp. 116, 120 (W.D. La. 1943), *aff'd*, 140 F.2d 387 (5th Cir. 1944). "[T]he capacity in which a party executes a document is largely a matter of that party's intention as determined from the circumstances surrounding the transaction." *Veterans Commercial Properties, LLC v. Barry's Flooring, Inc.*, 11-6 (La. App. 5 Cir. 5/24/11), 67 So. 3d 627, 631.

### i. The Agreements bind the Adult Bookstores as parties

The Adult Bookstores argue that the Court should dismiss Counts I-III of the Amended Complaint because they are not parties to the Agreements. However, the pleadings, which include the Agreements, sufficiently state a plausible claim that Gulf Coast entered into the Agreements on behalf of the Adult Bookstores with the intent to bind them as parties. First, both Recital A and the signature block of the Agreements suggest that they were entered into by Gulf Coast (the "Owner" of the Adult Bookstores) on behalf of the specific store. Moreover, pursuant to ¶ 2 of the

Agreements, XXX agreed to install video devices for use by the Adult Bookstores' paying customers. Pursuant to the Agreements, the Adult Bookstores undertook obligations to host the video devices and to allow their customers to use such devices for profit.

Furthermore, in its Amended Complaint, XXX alleges that Gulf Coast is the owner, operator, and/or controlling entity of the Adult Bookstores. ¶¶ at 12-14. The allegations in the Amended Complaint surrounding the 20-year history of the contractual relationship between Goalie, XXX, and the Adult Bookstores further support a finding the Adult Bookstores were parties to the Agreements. Accepting the allegations in the Amended Complaint as true, XXX has stated a plausible claim that the Adult Bookstores are parties to the Agreements. Accordingly, Defendants' Motion to Dismiss [44] is denied on this issue.

The Court similarly denies summary judgment. The Adult Bookstores argue that they are not parties to the Agreements because Gulf Coast lacked authority to enter into contracts on their behalf. The Adult Bookstores note that the Management Agreement with Gulf Coast was signed on April 20, 2011, one year after the 2010 Service Agreements were executed. The Adult Bookstores maintain that the Management Agreement, signed after the Service Agreements, could not have authorized Gulf Coast to enter into the Service Agreements on their behalf.

A reasonable jury could find that the Adult Bookstores were parties to the Agreements. The Adult Bookstores' assertion that Gulf Coast lacked the authority to contract on their behalf is contradicted by the Management Agreement, which states: "As agent for each of The Companies, Manager is authorized to enter into contracts on behalf of The Companies . . ."[3] Manag. Agree. at ¶ 6-A. Though signed on April 20, 2011, the Management Agreement explicitly provides: "The effective date of this Agreement is April 15, 2010 irrespective of the date on which it is signed by any of the parties." *Id.* at ¶ 13.

Moreover, Olsafsky, who signed the Agreements on behalf of Gulf Coast and the Adult Bookstores, testified that he intended to bind the Adult Bookstores to the Agreements and had the authority to do so. Olsafsky Dep. 183:10-14, Oct. 25, 2016. The Management Agreement and deposition testimony create a question of fact as to whether Gulf Coast was authorized, and intended, to bind the Adult Bookstores. Thus, summary judgment is unwarranted.

### ii.     Gulf Coast undertook an obligation to perform

In its Motion to Dismiss [45] and Motion for Summary Judgment [57], Gulf Coast argues that it is not bound to the Agreements because they impose only a permissive obligation of use of the arcade devices.

---

[3] Pursuant to the Management Agreement, the term "The Companies" refers to Anwar, LaGrange, and Western. The term "Manager" refers to Gulf Coast.

The Agreements provide: "SERVICE COMPANY shall install (or has previously installed) video viewing devices in the business for use by the paying customers of OWNER in arcade booths, preview rooms and theaters, which devices *may* be used by OWNER to show adult movies." ¶ 2 (emphasis added).

Gulf Coast cites to several cases to support the proposition that the word "may" denotes a permissive alternative, and argues that the Agreements' use of the word "may" gives it the option to utilize, or refrain from utilizing, XXX's devices.

Gulf Coast essentially asks the Court to analyze the use of the term "may" in a vacuum. This approach would be contrary to Alabama and Louisiana law. *See Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000) ("Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract."); La. Civ. Code Ann. art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.").

Viewing the Agreements as a whole, it is apparent that their primary purpose was for all parties to profit through an arrangement according to which XXX provided the devices, and Gulf Coast and the Adult Bookstores provided the viewership. Construing Gulf Coast's responsibility to perform as voluntary entirely defeats the purpose of the Agreements.

In addition, exclusively in its Motion for Summary Judgment [57], Gulf Coast argues that it was not bound to the Agreements because it was not the "owner" of the Adult Bookstores when the Agreements were executed in 2010. Gulf Coast submits that in 2010, Entratter's estate, not Gulf Coast, owned the Adult Bookstores.

As previously noted, the Management Agreement between Gulf Coast and the Adult Bookstores became effective on April 15, 2010, the same day on which the Service Agreements were executed. The Agreements designate Gulf Coast as the owner of the Adult Bookstores. Based on the aforementioned evidence, a reasonable jury could find that Gulf Coast was bound to the Agreements as owner of the Adult Bookstores. Accordingly, the Court denies Gulf Coast's motions on the issue of whether Gulf Coast is bound as a party to the Agreements.

**B. Whether the Adult Bookstores breached the Agreements**

### i. XXX has failed to state a claim that the Adult Bookstores breached the Agreements by Gulf Coast's termination

The Adult Bookstores submit that XXX has not stated a breach of contract claim because it fails to specifically allege how the Adult Bookstores breached the Agreements. In the Amended Complaint, XXX repeatedly alleges that Gulf Coast breached the Agreements, *see* ¶¶ 27-29; 44; 52; 59, but XXX does not allege that any specific store terminated its respective Agreement.

XXX maintains that the repudiation of Gulf Coast, the authorized agent of the Adult Bookstores, constitutes a breach of the Agreements on their behalf. According to XXX, "it is self-evident that a parent and subsidiary can be liable for each other's actions if either is acting on behalf of one another." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (noting that although "[a] parent corporation generally is not liable for the acts of its subsidiary . . . . in extraordinary cases . . . courts will pierce the corporate veil and disregard the corporate entity, treating the parent corporation and its subsidiary as a single entity.").

XXX reliance on *Corrigan* is misplaced. In *Corrigan*, the plaintiffs sought to hold the parent company liable for the acts of its subsidiary by piercing the corporate veil; however, in this case, XXX seeks to hold the Adult Bookstores (the alleged subsidiary) liable for Gulf Coast's (the alleged parent) actions. Even if the Court were to apply *Corrigan* in construing the relationship between the Adult Bookstores and Gulf Coast, XXX did not raise a claim for piercing the corporate veil in its Amended Complaint.

XXX has not pled that the Adult Bookstores terminated the Agreements. XXX's allegation that Gulf Coast is the owner, operator, and/or controlling entity of the Adult Bookstores, alone, is insufficient to support a plausible claim that Gulf Coast's termination constitutes a breach on the Adult Bookstores' behalf. XXX's

conclusory allegations that the Adult Bookstores breached the Agreements, *see* ¶¶ 47, 54, 61, similarly do not suffice. Accordingly, the Adult Bookstores' Motion to Dismiss [44] is granted in part. For similar reasons, XXX's Motion for Partial Summary Judgment [55] is denied on this issue.[4]

> ### ii.     XXX has failed to state a claim that the Adult Bookstores breached the Agreements by damaging its arcade devices

The Adult Bookstores argue that the Agreements do not impose on them any obligations relating to maintenance or damage of the devices. Additionally, the Adult Bookstores maintain that XXX has not presented any evidence that they were the parties responsible for such damage.

There are two provisions in the Agreements pertaining to maintenance of the arcade devices. First, ¶ 2 assigns XXX with the responsibility of all service, maintenance, and repairs of the devices. Second, ¶ 12 provides:

> SERVICE COMPANY shall not be responsible for any damage or repairs caused by the servicing of the equipment by any person other than SERVICE COMPANY and its employees. During the term of this Agreement, OWNER shall not permit the equipment to be serviced or repaired by anyone other than SERVICE COMPANY and its employees.

---

[4] Further motivating the Court's decision to deny XXX's Motion for Partial Summary Judgment [55] is the fact that the Management Agreement expressly provides that the relationship between Gulf Coast and the Adult Bookstores "shall be that of principal and independent contractor." Manag. Agree. at ¶ 10. "Generally, one is liable for the actions of an agent but is not liable for the actions of an independent contractor." *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009).

The Agreements do not impose any obligation on the Adult Bookstores regarding general damage to the devices. The Agreements require XXX, not the Adult Bookstores, to service and maintain the devices. Furthermore, XXX has not alleged that the Adult Bookstores damaged its devices "in the process of servicing the equipment," as provided under ¶ 12. XXX's allegations of damage to its equipment more appropriately support a claim for conversion, than for breach of contract. However, XXX elected not to bring a claim for conversion in its original complaint; and the Court has already denied XXX's motion to add a conversion claim to its Amended Complaint. *See* [Dkt. #38]. Therefore, on this issue, the Adult Bookstores' Motion to Dismiss [44] is granted and XXX's Motion for Partial Summary Judgment [55] is denied.

Because XXX has failed to state a claim that the Adult Bookstores breached the Agreements – by termination or damage to the devices – Counts I-III are dismissed as to the Adult Bookstores.

### C. Whether XXX materially breached the 2010 Service Agreements

"Louisiana recognizes the principle that where one party substantially breaches a contract the other party to it has a defense and an excuse for non-performance." *Olympic Ins. Co. v. H. D. Harrison, Inc.*, 463 F.2d 1049, 1053 (5th Cir. 1972). Similarly, in Alabama, "[i]f the defaulting party materially breaches its duties, the injured party may repudiate the agreement and not perform

prospectively." *Edwards v. Allied Home Mortg. Capital Corp.*, 962 So. 2d 194, 207 (Ala. 2007).

Only a substantial or material breach by one party excuses the other party's performance on the contract. *Nationwide Mut. Ins. Co. v. Clay*, 525 So. 2d 1339, 1343 (Ala. 1987); *LAD Servs. of La., L.L.C. v. Superior Derrick Servs., L.L.C.*, 2013-0163 (La. App. 1 Cir. 11/7/14), 167 So. 3d 746, 756, *writ not considered*, 2015-0086 (La. 4/2/15), 162 So. 3d 392 (noting that a substantial breach precludes the party's enforcement of the contract). "A material breach is one that touches the fundamental purposes of the contract and defeats the object of the parties in making the contract." *Crestview Mem'l Funeral Home, Inc. v. Gilmer*, 79 So. 3d 585, 592 (Ala. 2011) (internal quotation marks and citation omitted).

### i. Whether XXX materially breached the Agreements by retaining walk-out fees is a question of fact

In their motions for summary judgment [56, 57], Defendants argue that XXX may not recover for breach of contract because it materially breached the Agreements by charging walk-out fees in excess of the 60/40 gross profits split.

In support of this argument, Gulf Coast points to Moore's deposition testimony and an Internal Collection Report revealing the extent of the walk-out fees. Gulf Coast submits that White ordered Moore to stop charging the walk-out fees, but Moore refused. White testified that upon discovering the walk-out fees, he

told Moore that he felt "like this is going to be a problem." White. Dep. 117:1-7, July 12, 2017.

XXX does not dispute that it charged walk-out fees. Instead, XXX submits that its actions do not constitute a material breach of the Agreements because the parties intended for XXX to retain such fees. XXX maintains that it is custom industry practice to assign walk-out fees to the service company. XXX further maintains that Gulf Coast neither objected to XXX's retention of such fees, *see* Moore Dep. 238:15-18, Dec. 14, 2016, nor mentioned the fees as a reason for termination at the onset of litigation. Finally, XXX argues that even if its retention of the walk-out money constitutes a breach of the Agreements, the breach was not material or substantial.

The testimony and course of dealing create a genuine issue of fact as to whether XXX's conduct of charging walk-out fees in excess of the 60/40 split constitutes a material breach of the Agreements. The fact-finder will need to resolve not only the issue of whether XXX's alleged breach was "material" or "substantial," but also whether the parties intended for XXX to retain walk-out fees, Gulf Coast actually objected to XXX's retention of walk-out fees, and Gulf Coast terminated the Agreements because of the walk-out fees.

Gulf Coast further argues that the parol evidence rule bars the introduction of evidence of a walk-out fee arrangement contradicting the fee structure set forth

in the Agreements.[5] Gulf Coast notes that the Agreements contain a merger clause which states: "This Agreement contains the entire understanding and Agreement of the parties hereto and supersedes any prior oral or written Agreements regarding the subject matter of this Agreement." ¶ 16.

Under Alabama law, where "a written contract exists, the rights of the parties are controlled by that contract and parol evidence is not admissible to contradict, vary, add to, or subtract from its terms. However, if the contract is ambiguous, parol or extrinsic evidence will be allowed to clarify the contract." *Marriott Int'l, Inc. v. deCelle*, 722 So. 2d 760, 762 (Ala. 1998) (internal citations omitted).

Similarly, under Louisiana law, "[a]lthough parol evidence is inadmissible to vary the terms of a written contract, La.C.C. art. 2276, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties." *Dixie Campers, Inc. v. Vesely Co.*, 398 So. 2d 1087, 1089 (La. 1981).

Gulf Coast's attempt to exclude testimonial evidence pursuant to the parol evidence rule is unavailing. Both Alabama and Louisiana law provide that such

---

[5] Gulf Coast mistakenly cites to Michigan law to support its argument. However, the Agreements explicitly provide that Alabama and Louisiana law govern.

evidence is admissible to clarify ambiguity and to show the intention of the parties. The Addendums state that XXX is entitled to "40% of all gross revenues." The Court considers the term "gross revenues" ambiguous because it lends itself to more than one reasonable meaning. *See Drummond Co. v. Walter Indus., Inc.*, 962 So. 2d 753, 780 (Ala. 2006); *Lankford v. Koch Gateway Pipeline Co.*, 98-0719 (La. 6/5/98), 713 So. 2d 464, 466. The Agreements and Addendums do not specify whether the parties intended for "gross revenues" to include, or exclude, walk-out fees.

XXX has raised a genuine issue of fact with respect to the parties' intent, particularly in light of their 20-year course of dealing and Gulf Coast's decision not to object to XXX's retention of walk-out fees until the onset of this litigation. *See Lankford*, 713 So. 2d at 466 (finding parol evidence admissible where it was "relevant to the intent of the parties in light of all the circumstances of their relationship and the gas market over the years."). "When evidence of the intent of the parties is in dispute, it is a fact question to be determined by the trial court . . . ." *Fouts v. Beall*, 518 So. 2d 1236, 1239 (Ala. 1987). Thus, summary judgment is inappropriate.[6]

---

[6] In its Response [62], XXX asks the Court to reform the Agreements to express their "true intent" of allowing XXX to retain the walk-out fees. However, as noted in Gulf Coast's Reply [66], XXX may not raise a new claim, such as reformation, in its response to Gulf Coast's motion. *See Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) ("A non-moving party

### ii.   XXX did not materially breach the Agreements by failing to service the devices

In their Motion for Summary Judgment [56], the Adult Bookstores and SGS argue that XXX also breached the Agreements by failing to clean the arcade devices and keep them in working order. This argument is primarily based on White's testimony that there "were booths that were down completely and were never fixed" and that he complained to Moore throughout the first few months of 2014 about maintenance of the equipment. White Dep. 97-98, July 12, 2017.

Even assuming, *arguendo*, that XXX breached the Agreements by failing to maintain its video arcade equipment, Defendants have failed to establish that XXX's alleged breach was material or substantial. The testimony makes clear that most of XXX's video arcades were functional. That XXX may have neglected to service a select number of its arcades does not "defeat the object of the parties" in making the Agreements. *See Crestview*, 79 So. 3d at 592; *see also Karno v. Joseph Fein Caterer, Inc.*, 2002-1269 (La. App. 4 Cir. 4/16/03), 846 So. 2d 105, 109–10, writ denied, 2003-1358 (La. 9/19/03), 853 So. 2d 642 (upholding the trial court's finding that although certain items on the property required maintenance, the lessee's failure to service those items did not amount to breach, given the size of

---

plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.") (internal citation and quotation marks omitted).

the premises and the maintenance history over several years). Defendants' Motion for Summary Judgment [56] is denied on this issue.

### D. XXX is not entitled to liquidated damages under the Agreements

Paragraph 9 of the Agreements provides: "In the event OWNER breaches the provisions of paragraphs 5, 6, or 7, the parties agree that each video viewing device shall have a liquidated damages value of $5,000.00 per device and/or booth."

Paragraphs 5 and 6 of the Agreements are inapplicable to this action.[7] Paragraph 7 provides, in pertinent part:

> During the term of this Agreement, whenever OWNER and SERVICE COMPANY mutually agree that replacement equipment is necessary or desirable . . . SERVICE COMPANY will purchase, install and maintain all such replacement equipment . . . . Following the termination of this Agreement, SERVICE COMPANY shall have the right to immediate possession of the video viewing devices, and access shall be given by OWNER to SERVICE COMPANY to take possession of the video viewing devices.

In their motions to dismiss [44, 45] and motions for summary judgment [56, 57], Defendants argue that XXX has not stated a claim for liquidated damages because XXX has neither alleged that Defendants permitted someone other than

---

[7] Paragraph 5 addresses additional locations. Paragraph 6 addresses XXX's right of first refusal.

XXX to service or repair the equipment nor that Defendants prevented XXX from taking immediate possession of the devices.

In its Amended Complaint, XXX alleged that Gulf Coast removed and damaged its equipment and placed it in storage. XXX further alleged that it discovered the damage when it removed the equipment from storage on February 28, 2015. ¶¶ 29-30. These allegations support a plausible claim that Gulf Coast violated XXX's right to immediate possession of the devices by somehow preventing XXX from picking up its equipment until February 2015.

Nevertheless, while XXX's claim for liquidated damages survives Defendants' motions to dismiss, it does not withstand their motions for summary judgment. XXX has not offered any evidence to support its claim that it was prevented from taking immediate possession of the arcade devices. In fact, in the termination letter dated September 30, 2014, Gulf Coast ordered XXX to pick up its equipment promptly. XXX did not pick up its equipment until February 28, 2015. XXX has not provided any reason for the six-month delay in retrieving its equipment. Accordingly, summary judgment for Defendants is granted on this issue and XXX cannot seek entitlement to liquidated damages under ¶ 7.

## II.    Breach of Contract (Count IV)

XXX alleges that SGS breached a Promissory Note by failing to make payments on a debt assumed by SGS on behalf of the Adult Bookstores. SGS

argues that the Court should dismiss Count IV because XXX has failed to state a claim for breach of contract on the Promissory Note. SGS submits that because the Note is not signed, it is void and unenforceable under the statute of frauds.

The parties agree that Michigan law applies to determine the sufficiency of a writing for purposes of the statute of frauds. In Michigan, a promise to answer for the debt of another is void unless it is ". . . in writing and signed with an authorized signature by the party to be charged . . . ." M.C.L. § 566.132.

XXX does not contest the applicability of the statute of frauds, but rather argues that the fourteen payments SGS allegedly made evince its contractual obligation under the Note. In support of this argument, XXX submits that "[p]artial payment of [a] previously discharged debt [is] some indication that defendants intended to assume the discharged debt." *Abdella v. Tessmar*, No. 248851, 2005 WL 161165, at *3 (Mich. Ct. App. Jan. 25, 2005).[8]

In Michigan, ". . . the doctrine of part performance has historically been applied only to contracts involving the sale of land . . . ." *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 473 N.W. 2d 652 (1991). The Michigan Supreme Court has

---

[8] To further support its argument, XXX relies on an email correspondence between Moore and White, outside of the pleadings. XXX argues that these emails provide evidence that the statute of frauds was: 1) satisfied by the email signature; or 2) dispensed with by oral agreement. XXX further argues that discovery is necessary because it is possible that a signed promissory note exists and is in SGS' possession. Because the emails were not included in the pleadings, they are not factored into to the Court's analysis of the Motion to Dismiss [44].

not directly addressed the issue of whether the doctrine of part performance applies to promises to pay for debts of another. In *Brown City Concrete, Inc. v. Severn*, No. 295451, 2011 WL 3925408, at *5 (Mich. Ct. App. Aug. 18, 2011), the Michigan Court of Appeals rejected the plaintiff's argument that the defendant's payments constituted partial performance of his personal guarantee and held that the defendant's part performance did not excuse the statute of frauds requirement for promises to answer for the debt of another.

Similarly, in *Braver Lumber & Supply Co. v. Bantam Computers, Inc.*, 1988 U.S. Dist. LEXIS 18107, at *4 (E.D. Mich. Feb. 25, 1988), this Court held that the doctrine of part performance was inapplicable to enforce a promise made under the suretyship clause of the statute of frauds.

XXX has not cited to any case that establishes that the part performance exception to the statute of frauds applies here. The fact that partial payment of a previously discharged debt may provide some indicia of intent to assume the debt, *see Abdella*, 2005 WL 161165, at *3, does not relieve the parties of the statute of frauds' requirement. Applying *Dumas*, the Court declines to extend the doctrine of part performance to this context. Because the Note in which SGS promised to pay

the alleged debt of the Adult Bookstores was not signed by SGS, XXX cannot recover under a theory of breach of contract. Accordingly, Count IV is dismissed.[9]

### III.    Unjust Enrichment (Count V)

XXX pleads unjust enrichment as an alternative theory of recovery against Defendants. The parties agree that Michigan law applies to XXX's claim for unjust enrichment. Under Michigan law:

> [T]o plead a claim of unjust enrichment, a plaintiff must establish that the defendant has [1] received and retained a benefit from the plaintiff and [2] inequity has resulted. Michigan courts will then imply a contract to prevent unjust enrichment. However, courts will not imply a contract where there is an express contract governing the same subject matter.

*U.S. ex rel. Walter Toebe Const. Co. v. Guarantee Co. of N. Am.*, 66 F. Supp. 3d 925, 933 (E.D. Mich. 2014).

Defendants argue that an award of unjust enrichment is unwarranted because the Agreements govern who is responsible for paying XXX for its services. Defendants further argue that XXX has not provided any facts to support its assertions that Defendants received and retained any benefit.

---

[9] Even if the Court were to deny SGS' Motion to Dismiss [44], it would grant its Motion for Summary Judgment [56] and deny XXX's Partial Motion for Summary Judgment [55] on this issue. The email exchange between Moore and White shows that an arrangement for SGS' payment of the debt was discussed, but not formally agreed to. Neither party offers evidence that SGS actually made payments to XXX on the Note. Even assuming that SGS had made the fourteen payments as alleged, this fact would not excuse the parties' obligations under the statute of frauds.

XXX has stated a plausible claim for unjust enrichment against Gulf Coast and the Adult Bookstores for damaging its arcade devices. As explained in Section I-B-ii, the Agreements do not expressly govern the issue of general damage to the equipment. Thus, Gulf Coast and the Adult Bookstores are not liable for damaging XXX's equipment under a breach of contract theory. However, if Gulf Coast and the Adult Bookstores damaged XXX's equipment, but were nevertheless permitted to evade compensation, they would be unjustly enriched at XXX's expense. Equity demands that Gulf Coast and the Adult Bookstores make restitution if XXX can establish that they damaged its equipment. *See Tkachik v. Mandeville*, 487 Mich. 38, 49, 790 N.W.2d 260, 266–67 (2010).

Furthermore, XXX has stated a plausible claim for unjust enrichment against SGS with respect to the Promissory Note. In Section III, the Court concluded that there is no enforceable contract for payment of the debt owed to XXX. If excused from its obligations to perform, SGS would receive a windfall of $29,650 to XXX's detriment. Assuming XXX can prove the existence of the debt, XXX is entitled to pursue its claim against SGS under the doctrine of unjust enrichment. Therefore, the Court denies Defendants' motions to dismiss Count V.

The Court further denies Defendants' motions for summary judgment on this issue. Viewing the evidence in the light most favorable to XXX, a reasonable jury could find that Gulf Coast and the Adult Bookstores damaged the equipment

during the six-month period the equipment was stored at their facilities. In addition, through examining the email exchange between Moore and White, and the alleged fourteen payments SGS made to XXX, a reasonable jury could find that SGS agreed to pay XXX for the debt owed by the Adult Bookstores.

## IV.  Counter-claims

In their Answer [5] to the original complaint, the Adult Bookstores filed an action for an accounting of funds collected by XXX and for money judgment against XXX for any amounts collected in excess of the Agreements. The Adult Bookstores have not yet filed an answer to the Amended Complaint.

XXX seeks dismissal under Fed. R. Civ. P. 12(c), which provides: "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." XXX argues that the Adult Bookstores have failed to adequately plead the elements of a claim for an accounting or a money judgment.

The Adult Bookstores maintain that XXX's motion for judgment on the pleadings is premature. The Adult Bookstores submit that because they have not filed answers to the Amended Complaint, the pleadings are not closed, and relief is precluded under Rule 12(c).

In *Dunn-Mason v. JP Morgan Chase Bank Nat. Ass'n*, No. 11-cv-13419, 2013 WL 4084676, at *4 (E.D. Mich. Aug. 13, 2013) (internal citations omitted) this Court explained:

Under Rule 12(c), a motion for judgment on the pleadings cannot be filed until the pleadings are "closed." Although it does not appear that the Sixth Circuit has directly addressed this issue, a number of district courts in this and other circuits addressing this issue have held that pleadings are not "closed" until every defendant has filed an answer . . . . [t]he undersigned recognizes that courts maintain discretion in certain circumstances to consider a Rule 12(c) motion even when one of the defendants has not filed an answer. However, this is generally true in only limited circumstances, such as when a plaintiff fails to serve one of the defendants.

This case does not present circumstances warranting the Court's consideration of XXX's 12(c) motion prior to the close of the pleadings. Because Defendants have not yet filed answers to the Amended Complaint, XXX's motion is premature. The Court denies XXX's Motion to Dismiss [54] without prejudice.

CONCLUSION

For the reasons stated above, and incorporating the reasons stated on the record, the Court: **GRANTS in part and DENIES in part** the Motion to Dismiss [44] filed by Defendants SGS and Anwar, LaGrange, and Western; **DENIES** Defendant Gulf Coast's Motion to Dismiss [45]; **DENIES without prejudice** Plaintiff XXX's Motion to Dismiss Counter-plaintiffs' Claim for Accounting [54]; **DENIES** Plaintiff XXX's Motion for Partial Summary Judgment [55]; **GRANTS in part and DENIES in part** the Motion for Summary Judgment [56] filed by Defendants SGS and Anwar, LaGrange, and Western; and **GRANTS in part and DENIES in part** Defendant Gulf Coast's Motion for Summary Judgment [57].

This ruling has the effect of dismissing Counts I-III of the Amended Complaint against Defendants Anwar, LaGrange, and Western and dismissing Count IV in its entirety. The ruling on Defendants' motions for summary judgment dismisses XXX's claim for liquidated damages against all Defendants.

Remaining against Defendants SGS, and Anwar, LaGrange, and Western is Plaintiff XXX's claim for unjust enrichment (Count V). Remaining against Defendant Gulf Coast are Plaintiff XXX's claims for breach of contract (Counts I-III) and unjust enrichment (Count V).

Accordingly,

**IT IS ORDERED** that the Motion to Dismiss [44] filed by Defendants SGS and Anwar, LaGrange, and Western is **GRANTED in part and DENIED in part**;

**IT IS FURTHER ORDERED** that Defendant Gulf Coast's Motion to Dismiss [45] is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff XXX's Motion to Dismiss Counter-plaintiffs' Claim for Accounting [54] is **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff XXX's Motion for Partial Summary Judgment [55] is **DENIED**;

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment [56] filed by Defendants SGS and Anwar, LaGrange, and Western is **GRANTED in part and DENIED in part**;

**IT IS FURTHER ORDERED** that Defendant Gulf Coast's Motion for Summary Judgment [57] is **GRANTED in part and DENIED in part**.

**SO ORDERED**.


                                        s/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: March 30, 2018                   Senior United States District Judge